## SAWYER & A. v. PETERS & A.

Where a conveyance of land, not recorded, was given up to the grantors to be cancelled, it was *held* that the title re-vested in the grantors; and that equity would restrain by injunction the setting up of the title under such conveyance by the representatives of the grantee.

Held, also, that a parol argeement to give up such deed to be cancelled would not be effective unless the deed was actually surrendered.

Held, also, that the re-vesting of the title would not be defeated by an agreement that upon such surrender the grantors should convey the land to another person on payment of the price.

This is a bill in equity, brought by Sawyer and others against the widow and minor children of Jacob Peters, deceased, to whom the plaintiff, in his lifetime, had conveyed certain real estate. The bill was brought to compel a release of the dower and homestead rights in that land, upon the ground, as alleged, that the said Jacob, before his death, had surrendered to the grantors the deeds of conveyance to be cancelled, for the purpose of re-vesting the title, the deeds not having been recorded, and the security for the price having been given up. The rest of the pleadings sufficiently appear in the opinion of the court.

The cause was heard upon bill, answers, and proofs.

*Minot, Tappan & Mugridge,* for plaintiffs.

*C. P. Sanborn,* for defendants.

BELLOWS, C. J.   The proofs show a conveyance by Mary B. Whitman, by her guardian, of one fifth part of the land to Jacob Peters, on January 24, 1867, and a conveyance of the rest by Nathan Sawyer and others, on December 31, 1866, thus and in fact covering the whole land. The price of the entire property was $600, for which Peters gave his promissory note, signed also by Sarah McAlpine as his surety, it being agreed that he should mortgage the land to her to secure her against

this note, and the deed of Sawyer and al. was given to her without being recorded, to procure a mortgage deed to be prepared.

The weight of the evidence is, that on conferring with a person applied to to make this mortgage, it was supposed that it could not properly be done in that way, and therefore Mrs. McAlpine brought back the deed to Mr. Peters; and it was finally agreed that the deed should be given up to the grantors to be cancelled, and the note given up, that the grantors might convey the land directly to Mrs. McAlpine; and the deed and note were so given up for that purpose. It is not clear that the agreement included the deed given by Mary B. Whitman; at all events, it was not given up, but remained in Peters's hands until his death, which occurred soon after; and after his death the land was set off to the widow and heirs of Mr. Peters as dower and homestead.

It is urged by defendants' counsel that if any agreement to give up the deed is shown, it was not for the purpose of re-vesting the title in the grantors, but to enable them to convey it to Mrs. McAlpine.

We think, however, that the deed was given up to be cancelled for the purpose of re-vesting the title in the grantors, and the effect of it cannot be defeated by the fact that a conveyance by them to Mrs. McAlpine was contemplated. The purpose to cancel the deed in order to re-vest the title is shown by a preponderance of evidence.

In respect, then, to four undivided fifth parts of the land in question, the plaintiffs would be entitled to a decree if the proper parties were before the court. From the proofs it appears that the three heirs of Jacob Peters are minors, and must appear by guardian, or a guardian must be appointed, and the bill taken as to them *pro confesso*. On this being done, a decree may be entered according to the prayer of the bill as to these four fifths parts.

In respect to the other fifth part we think the bill is not maintained, and we can see no remedy for the plaintiffs unless they can maintain the position that the price of that share is still unpaid, and that there is by the laws of this State an equitable lien on the land for it.

Whether there is such a lien by the law of this State was supposed to be an open question in *Arlin* v. *Brown*, 44 N. H. 102.